Leasau's prayer for declaratory and injunctive relief is denied.

It is so ordered.

**IVI S. MULITAUAOPELE, Plaintiff**

**v.**

**MATA'UTIA P. TUIAFONO, LUTU FUIMAONO, SAVEA TAUFAO, and THE SENATE of the LEGISLATURE OF AMERICAN SAMOA, Defendants**

CA No. 04-97

March 3, 1997

Before KRUSE, Chief Justice, and TAUANU'U, Chief Associate Judge.

Counsel:      For Plaintiff, Pro se
                 For Defendant, Gata Edwin W. Gurr

Opinion and Order:

## Introduction

On January 9, 1997, plaintiff Ivi S. Mulitauaopele ("Pele") filed a complaint against defendants Mata'utia P. Tuiafono ("Mata'utia"), Savea Taufao ("Savea"), Lutu Fuimaono, and the Senate of the American Samoa Legislature. In his complaint, Pele alleges that defendants collectively conspired to commit civil and criminal fraud, and that Savea had assumed via unconstitutional means one of Sua County's two Senate seats in the American Samoa Legislature. He further claims that he, not Savea, is a duly elected Senator for Sua County.

On January 31, 1997, we entertained Pele's motion for a preliminary injunction to enjoin Savea from serving as Senator, and heard testimony from both parties. Despite clear instructions from the court in its show cause order as to the subject matter for the preliminary injunction hearing, Pele failed to address the grounds for granting a preliminary injunction. We denied the motion for a preliminary injunction, and ordered a trial on the merits of his claims. That order expressly stated that evidence at trial should not be duplicative, as the court had, pursuant to T.C.R.C.P. 65(a)(2), incorporated testimony from the preliminary injunction hearing in the record for the trial on the merits. Notwithstanding, we primarily listened to cumulative testimony at the trial on the merits held February 28, 1997. Now that the court is satisfied that all parties have had more than ample opportunity to make their respective cases, we issue the following opinion and order:

## Jurisdiction

▌ Under the Revised Constitution of American Samoa ("Revised Constitution"), the High Court does not have jurisdiction to resolve disputes concerning the outcome of a Senate election conducted according to the law, nor does the Court possess the authority to determine which of many candidates is the most qualified to represent a county in the Senate. art. II, § 22. However, the Court's jurisdiction does extend to review the question of whether a county council followed proper election procedure when electing its Senator. *See Mauga v. Lutu*, 10 A.S.R.2d 115, 118 (Trial Div. 1989) (citing *Meredith v. Mola*, 4 A.S.R. 773, 776-77 (1973)); *see also Leasau v. Paopao,* CA No. 5-97 at 4-5 (Trial Div. Feb. 27, 1997). Therefore, the question of whether Sua County had elected its second Senator according to Article II, § 4 of the Revised Constitution, is an issue on which the High Court may properly rule.

## Relevant Facts

Sua County, or Senate District No. 5, includes the eastern district villages of Afono, Faga'itua, Lauli'i, Amaua, Masefau, Masausi, and Sailele. Pele is a matai from Lauli'i, while Savea is a matai from Amaua. On December 11, 1996, the Sua County Council convened to elect its two Senate representatives. At the meeting, the Council followed its relatively recent practice, established by the late Paramount Chief Leiato Tupua, of allocating one of the senate seats to the matai of Fagaitua, Lauli'i, and Amaua ("Sua 1"), and the other to the matai of Afono, Masefau, Sailele, and Masausi ("Sua 2"). In effect, this meant that the matai of Sua 1 would pick one Senator from among its ranks, while the matai of Sua 2 would pick the other. In accordance with this understanding, Mata'utia's name was promptly presented before the entire County Council for Sua 2's allotted senate seat.[1]

On the other hand, the County Council did not arrive at a final decision with respect to the second senator from Sua 1. The three nominees involved from Sua 1, namely Pele, Savea, and Paleafei, were each unrelenting in their respective positions taken; while Paleafei was prepared to yield in favor of Savea, neither Savea nor Pele was prepared to yield to the other. After considerable discussion, Pele requested the Council for an opportunity for the three candidates to privately discuss the issue. The request was granted and the issue withdrawn from the entire County Council's consideration. As time went by, and without the apparent prospect of a resolution from the candidates on that day, the County Chief, Uto'ofili Vaimauga ("Uto'ofili"), adjourned the Council meeting and directed Pele, Savea, and Paleafei to continue to meet and decide among themselves who would take the county's second Senate seat. Uto'ofili further instructed them to have a decision by the week's end.

As it turned out, the three candidates failed to reach agreement. After four days, following the County Council's meeting, Savea and Paleafei reported to Uto'ofili and informed him that they were resolute in their position that Savea should assume the Senate seat. On the basis of their 2-1 majority reasoning, they persuaded Uto'ofili that Savea was the rightful second Senator. Uto'ofili thereupon notified the then Secretary of Samoan Affairs, Mata'utia, who sent Savea's name to Senate.

Following his unsuccessful efforts to win over Savea and Paleafei, Pele secured the backing of a number of Lauli'i matai who signed a letter of

---

[1]     The matai of Sua 2 were able to quickly decide on Mata'utia, because the only other contender from among its ranks withdrew his candidacy and conceded in favor of Mata'utia.

support, endorsing the Pele for the Senate. This letter, which was prepared by Pele, also contained a signature block for the County Chief, which, if signed, would purport to certify Pele's election to the Senate. As it happened, this document was also signed by Uto'ofili, who explained his inconsistent actions, testifying that he had only signed the Pele certification at the direction of Sala Samiu, the Deputy Secretary Samoan Affairs. The latter in turn sent over Pele's name to the Senate as well. The Senate, however, acted on the certification from Mata'utia and accepted Savea.

Neither Savea nor Uto'ofili presented the results of the three candidates' private meetings to the entire Sua County Council for its review and ratification. At the same time, the action taken by the Lauli'i matai, resulting in their letter of support for Pele, was never presented to the County Council for its consideration and any action it might deem appropriate.

## Legal Analysis

■ The Revised Constitution states that "Senators shall be elected in accordance with Samoan custom by the county councils of the counties they are to represent. . . ." art. II, § 4. Although there is no rigid "rule as to exactly how a county council must decide upon the person it selects to be a Senator," *Mauga v. Lutu*, 10 A.S.R.2d at 119-20 (quoting *Faiivae v. Mola*, 4 A.S.R. 834, 836 (1975)), the customary decision-making process referenced in the Revised Constitution does *not* involve complete delegation of the decision "to a mere sub-division of the county." *Id.* at 120; *see also Leasau v. Paopao, Leasau v. Paopao*, CA No. 5-97 at 4-5 (Trial Div. Feb. 27, 1997). Thus, in the case at hand, any lawful claim of right to a Senate seat from Sua County must stem from a final decision of the **entire** Sua County Council.

The process by which Savea was purportedly elected is patently unconstitutional. In *Mauga*, the court rejected the attempt of three village councils from a ten-village county to select a Senator outside the presence of the other seven villages; accordingly, we can not accept the attempt of three individuals from a political subdivision of a multiparty county council to select a Senator outside the presence of the other county council members. Defendants argue that the present case is distinguishable from *Mauga* because the Sua County Council "pre-approved" the delegation. However, in *Mauga*, the court's ruling was quite clearly based on the premise that the entire Maoputasi county council had *ex ante* agreed to the division of labor among the villages. *Id.* at 119 (describing the Maoputasi County delegation procedures as "recurring[]"). Thus, the fact that a county council pre-approves the results of a delegation does not make the delegation of decision-making power constitutional. A delegation of decision-making power to a

subdivision of the county council is only harmless when the entire county council subsequently gives its "stamp of approval . . . by ratification or confirmation or some other process where it may be clearly understood that the final decision in the election of a senator rested in the County Council." *Id.* at 119. In the instant case, there is no evidence whatsoever that the whole Sua County Council reviewed, ratified, or finalized *ex post* the selection of Savea by a subdivision of a subdivision. Therefore, we must declare that Savea has not been elected according to the Revised Constitution.

At the same time, because the entire Sua County council did not elect Pele as their Senator[2], we must also reject Pele's claim that he was duly elected Senator according to the Revised Constitution.[3]

With respect to Pele's other claims, we find no basis in law or in fact for criminal and civil conspiracy charges.

## Conclusion and Order

On the foregoing, we conclude that neither Savea nor Pele has been elected to the Senate, Legislature of American Samoa, by Sua County, pursuant to Article II, § 4 of the Revised Constitution. Accordingly, the second Senate seat in the Legislature of American Samoa, for Sua County, District 5, heretofore assumed by Savea, is vacant, and we so declare.

The matter of the vacant senate seat in the Legislature of American Samoa, for the County of Sua, District 5, must be, and is hereby, remanded to the entire Sua County Council, for their election of a second representative to the Senate, Legislature of American Samoa, consistent with this opinion and the Revised Constitution.

---

[2] Pele's claim to the Senate Seat based on the letter of support from some of the Lauli`i matai is even more tenuous than Savea's, as the Lauli`i matai had no claim whatsoever to any sort of mandate from the County Council.

[3] All of the purported "certifications" from various individuals at the Office of Samoan Affairs are completely worthless. According to the Revised Constitution, only county chiefs may certify "[t]he decisions of the members of the county councils." art. II, § 4. Of course, in the instant case, there was no decision of the members of the Sua County Council with respect to the Senate seat Savea assumed, so even Sua County Chief Uto`ofili could not validly certify anyone to fill that vacancy.

It is so ordered.